1
2
3
4                    UNITED STATES DISTRICT COURT
5                   NORTHERN DISTRICT OF CALIFORNIA
6
7   UNITED STATES OF AMERICA,              Case No.  13-cr-00601-JST-1
              Plaintiff,
8
         v.                               **ORDER DENYING MOTION TO
9                                         SUPPRESS**
10  HERI GARCIA,                          Re: ECF No. 29
              Defendant.
11
12
13  **I.      INTRODUCTION**
14          Defendant Heri Garcia ("Defendant" or "Garcia") has "move[d] for an order suppressing
15  all fruits of the warrantless search of an automobile and cell phone, and the seizure of his person,
16  all of which occurred on 20 August 2011, suppressing all statements made by any person during
17  the course of that search or during the course of any interrogation or interview by law enforcement
18  personnel, and suppressing the results of any DNA testing that followed the search and seizure."
19  Motion to Suppress ("Mot."), ECF No. 29.  The matter came for hearing on Wednesday, August
20  20.
21  **II.     BACKGROUND**
22          **A.      Procedural History**
23          In September 2013, the United States indicted Defendant for violation of 18 U.S.C.
24  922(g)(1), felon in possession of a firearm and ammunition, and 18 U.S.C. § 924(d)(1), gun
25  forfeiture.  Defendant filed the instant motion to suppress on June 30, 2014.  The only evidence
26  Defendant submitted in support of his motion were the two police reports prepared by the arresting
27  officers, the accuracy of which Defendant does not concede.  Mot., at 2, n. 1.
28          In response, the United States argued that two exceptions to the warrant requirement

United States District Court
Northern District of California

permitted the warrantless search of Defendant's automobile: Defendant's consent, and the "automobile exception" to the warrant requirement.  Government's Response to Defendant's Motion to Suppress ("Resp."), ECF No. 30.  The United States submitted the same two police reports as exhibits to a declaration.

After the deadline to file a reply brief had passed, Defendant filed a reply brief in support of his motion to suppress.  Heri Garcia's Reply in Support of Motion to Suppress Evidence and Request for an Evidentiary Hearing ("Reply"), ECF No. 32.  In support of his reply, Defendant produced a declaration by Andre Barocio, a percipient witness to the challenged searches.  Declaration of Andre Barocio ("Barocio Decl."), ECF No. 32-2.  The Court denied the United States' motion to strike the reply, but granted the United States leave to file a sur-reply, which it did.  ECF No. 35.

> **B.** **Factual Background**

>> **1.** **Background**

Early in the morning of August 20, 2011, Concord Police Department ("CPD") Officers Montero and VanDiver were on routine patrol, dressed in uniform but in an unmarked vehicle parked in the parking lot of a Wendy's restaurant in Concord, California directly across the street from La Cabana Bar & Grill.  Exhibit A to Declaration of Kimberly Hopkins, ECF No. 31-1 ("Montero Report"), at 2; Exhibit B to Declaration of Kimberly Hopkins, ECF No. 31-2 ("VanDiver Report"), at 1-2. [1]  At about 1:30 a.m., Andre Barocio and Mary Soto, observed by Officer Montero, left La Cabana, walked to Barocio's car, which was parked in the La Cabana parking lot, and got in.  Montero Report, at 2; Declaration of Andre Barocio ¶ 4, ECF No. 32-2.  Subsequently, Defendant Garcia, observed by Officers Montero and VanDiver, left La Cabana and approached his car, which was parked in the spot adjacent to Barocio's.  Barocio Decl. ¶ 4; Montero Report, at 2; VanDiver Report, at 2.  The officers then observed Defendant retrieve what appeared to them to be a beer from the driver side of his vehicle, and then drink from it.  Montero Report, at 2; VanDiver Report, at 2.  Defendant then walked around his car to speak with Barocio

_____

[1] Although the documents appear to be identical, the Court uses the police report versions submitted by the United States, since they were submitted as exhibits to a declaration.

United States District Court
Northern District of California

1    and Soto.  Montero Report, at 2; VanDiver Report, at 2; Barocio Decl. ¶ 4.

2         Concord Municipal Code 66-101, Chapter 9.15.010, makes it "unlawful for any person to

3    consume, drink, exhibit or possess an open container of any alcoholic or intoxicating beverage in

4    any quantity in" certain places open to public view, including on "private property open to the

5    public, including but not limited to parking lots and shopping centers, where the sale of alcoholic

6    beverages has not been licensed."  Exh. C to Reply.  The officers report that they decided to make

7    contact with Garcia because they believed him to be violating this ordinance.  Montero Report, at

8    3; VanDiver Report, at 2.

9                   **2.    The Officers' Approach**

10        The officers report that they then "contacted," or "pulled up on" Garcia, Barocio and Soto.

11   Montero Report, at 3; VanDiver Report, at 2.  Barocio declares that the officers "quickly pulled

12   into the parking lot and stopped behind Mr. Garcia's car," such "that it blocked both Mr. Garcia's

13   car and my car, and prevented us from backing out of our parking spaces."  Barocio Decl. ¶ 5.

14   Barocio declares that the officers then "ordered all of us not to move," "ordered Mr. Garcia to

15   place his hands on the trunk of the car," and patted down both Garcia and Barocio.  Id. ¶ 6.

16   Neither police report describes these actions.

17                  **3.    The Searches**

18        Barocio provides only the following description of the officers' communications with

19   Garcia: "After the officers searched us, I heard one of the officers ask Mr. Garcia if they would

20   find anything in Mr. Garcia's car.  The officers then searched Mr. Garcia's car without first asking

21   his permission to search it or getting his consent to search it."  Barocio Decl. ¶ 7.

22        The officers' report, in contrast, records the following.[2]  Upon speaking to Defendant, the

23   officers observed that his eyes were bloodshot, his speech was slurred, and his breath had an odor

24   of alcohol.  Montero Report, at 3; VanDiver Report, at 2.  The officers became concerned he

25   would drive under the influence of alcohol.  Id.

26        Defendant acknowledged that he was drunk, stating "that is why I am not driving."

27

28   _____

[2] The remaining facts in this section are drawn only from the police reports.

3

United States District Court
Northern District of California

United States District Court
Northern District of California

1    VanDiver Report, at 2.  Defendant also acknowledged that the beer he had been drinking was

2    inside the car.  Id.  Officer VanDiver shined a flashlight inside the vehicle and observed a half-

3    consumed bottle of beer in the driver's side door of the vehicle.  Id.  Officer VanDiver reports that

4    he asked Defendant if Officer VanDiver "could open his [Defendant's] vehicle and retrieve the

5    open beer." Id.[3]  Defendant stated that Officer VanDiver could do so.  Id.  Defendant indicated

6    that Officer VanDiver could retrieve Defendant's car keys from Defendant's pants pocket, which

7    Officer VanDiver did.  Id.

8         Upon opening the car, Officer VanDiver smelled marijuana.  Id.  Officer VanDiver asked

9    Defendant if he had marijuana in the vehicle, and Defendant replied "yes." Id.  Officer VanDiver

10   continued his search of the car, recovering a half-full bottle of Negro Modelo beer from the

11   driver's side area, a loaded Magnum Research Desert Eagle .44 caliber semiautomatic firearm

12   under the driver's seat, and a blue bandana and a plastic baggie containing marijuana in the pocket

13   behind the driver's seat.  Id.

14        Officer Montero notified Defendant that he was under arrest and he was transported to jail.

15   Montero Report, at 3.  Officer Montero reports that "Garcia had a cell phone in his possession at the

16   time of his arrest." Id., at 5.  "During a search, incident to arrest, of his cell phone, [Montero] located

17   evidence that Garcia was possibly involved in the sales of illegal narcotics." Id.  "He had several text

18   messages from people asking him to get them narcotics."

19   **C.    Legal Standard**

20        The Fourth Amendment protects individuals against unreasonable searches and seizures.

21   U.S. Const. amend. IV.  "Searches and seizures that offend the Fourth Amendment are unlawful

22   and evidence obtained as a direct or indirect result of such invasions is considered 'fruit of the

23   poisonous tree' and is inadmissible under the exclusionary rule." United States v. McClendon,

24   713 F.3d 1211, 1215 (9th Cir. 2013) (citing Wong Sun v. United States, 371 U.S. 471, 484-87

25

26

27   [3] Officer Montero describes Defendant's consent more broadly: "Garcia gave Officer VanDiver
     consent to search the Ford."  Montero Report, at 3.  But it is clear from both reports that Officer
     VanDiver has the superior knowledge of his conversation with Defendant.  See id. ("Please refer

28   to Officer VanDiver's supplemental report for further details of his conversation with Garcia").

4

1   (1963)).  The "burden of proving that a warrantless search or seizure falls within an exception to

2   the warrant requirement is on the government."  United States v. Scott, 705 F.3d 410, 416 (9th Cir.

3   2012).

4   **III.     ANALYSIS**

5          **A.     Warrantless Seizure of Defendant**

6          Defendant argues that "there is a disputed factual issue whether Mr. Garcia was unlawfully

7   seized," and argues that all evidence seized from the car was the fruit of an unconstitutional

8   search.  Reply, at 4.  The Barocio Declaration does not necessarily *conflict* with the officers'

9   account of their approach, although it provides additional details indicating that both Garcia and

10  Barocio were initially seized without a warrant.  But even assuming the truth of Barocio's

11  description of events, this does not establish that the detentions were unlawful.

12         Under the holding of Terry v. Ohio, 392 U.S. 1 (1968), and its progeny, "[p]olice may

13  detain or seize an individual for brief, investigatory purposes, provided the officers making the

14  stop have reasonable suspicion 'that criminal activity may be afoot.'"  United States v. Johnson,

15  581 F.3d 994, 999 (9th Cir. 2009) (quoting United States v. Orman, 486 F.3d 1170, 1173 (9th Cir.

16  2007)).  Here, the officers directly witnessed what appeared to them to be a violation of section

17  66-101 of the Concord Municipal Code.  That offense is a misdemeanor, punishable (at least

18  theoretically) by imprisonment.  See Chapter 1.05.200 of the Concord Municipal Code, Code

19  2002, § 1-20 ("a violation of this Code is a misdemeanor punishable pursuant to section 1.05.230,

20  except as otherwise expressly provided in this Code").  Moreover, having witnessed Defendant

21  exit a bar at 1:30 a.m., unlock his car, and begin drinking a beer from it, there was reason to

22  suspect he might be about to drive under the influence.  This constituted sufficient reasonable

23  suspicion for officers to investigate potential criminal activity, and to briefly detain Defendant

24  while they did so.

25         Defendant argues that section 66-101 of the Concord Municipal Code may be

26  unenforceable.  As support, he cites People v. Duran, 43 Cal.App.4th Supp. 1, 5-6 (Cal. App.

27  Dep't Super. Ct. 1995), which discussed a Los Angeles Municipal Code provision making it

28  unlawful to "possess[] an open container of an alcoholic beverage in public with the intent to

United States District Court
Northern District of California

United States District Court
Northern District of California

1  consume the contents thereof in public."  The <u>Duran</u> court held that this provision conflicted with

2  Article XX, section 22 of the California Constitution, which grants the state government the

3  "exclusive right and power to license and regulate the manufacture, sale, purchase, possession and

4  transportation of alcoholic beverages."  But <u>Duran</u> based its holding specifically on the conclusion

5  that the Los Angeles "city council improperly attempted to regulate the *possession* of alcohol."  43

6  Cal. App. 4th Supp. At 5 (emphasis in the original).  The <u>Duran</u> court did not address the question

7  of the enforceability of a ban on public alcohol *consumption*, and the court's analysis strongly

8  suggests it would have found a prohibition on alcohol consumption permissible; Article XX,

9  section 22 of the California Constitution does not give the state exclusive authority to regulate the

10 consumption of alcoholic beverages.  The Concord ordinance specifically prohibits alcohol

11 consumption, and the officers report they were investigating a consumption violation.  In any case,

12 under the Supreme Court's precedents, it is doubtful whether the search would be rendered

13 unconstitutional even if the ordinance the officers acted to enforce in good faith were later found

14 invalid or inapplicable under state law.  <u>See</u> <u>Virginia v. Moore</u>, 553, U.S. 164, 172 (2008) ("state

15 law [does] not alter the content of the Fourth Amendment"); <u>Whren v. United States</u>, 517 U.S.

16 806, 815 (1996) (where plainclothes officers in unmarked vehicles had probable cause to believe a

17 traffic violation had occurred, stop was permissible under the Fourth Amendment despite the fact

18 that applicable police regulations prohibited plainclothes officers in unmarked cars from enforcing

19 such laws in the applicable circumstances).

20      Defendant also argues that the officers have not established that they felt sufficient concern

21 for their safety, or for the destruction of evidence, to justify the patdowns of Garcia and Barocio.

22 But the patdowns are not at issue.  The officers did not seize any items during the patdowns, and

23 Defendant does not argue that the items seized in the car were somehow the fruit of the patdowns.

24 The Court need not, and does not, reach the question of whether it was constitutional to pat down

25 Defendant and Barocio.

26      The United States has met its burden to show that the initial seizure of Defendant was

27 constitutional, and suppression is not warranted on this ground.

28

6

United States District Court
Northern District of California

**B.**     **Warrantless Search of Automobile**

It is undisputed that officers searched Defendant's automobile without a warrant.  The United States argues that two exceptions to the warrant requirement apply.  First, they argue that Defendant consented to the search.  Second, they invoke the "automobile exception" to the warrant requirement.

**1.**     **Consent**

On the issue of whether Defendant consented to the search of his car, the police reports and the Barocio Declaration are in direct contradiction.  The Court is not persuaded by the United States' argument that the Barocio Declaration should be disregarded because he "fails to offer facts in support of" his statement that the Defendant did not consent to the search.  Sur-Reply, at 4, ECF No. 35.  Barocio declares that he was at the scene and could hear the officers' interactions with Garcia.  He may or may not be able to establish his account to the satisfaction of the finder of fact, and the United States would be entitled to explore the basis of his knowledge at any evidentiary hearing, but his declaration at least establishes a material dispute.  To the extent the constitutionality of the search hinges on whether Defendant consented to the search, an evidentiary hearing would be required.

**2.**     **Automobile Exception**

"The automobile exception permits police to search a vehicle as long as the vehicle is 'readily mobile' and 'probable cause exists to believe it contains contraband.'" United States v. Davis, 530 F.3d 1069, 1084 (9th Cir. 2008) (quoting Pennsylvania v. Labron, 518 U.S. 938, 940, (1996)); see also California v. Acevedo, 500 U.S. 565, 580 (1991) ("The police may search an automobile and the containers within it where they have probable cause to believe contraband or evidence is contained").

The officers observed Defendant violate Concord's open consumption ordinance, and upon investigation they observed a half-consumed bottle of beer within the car.  Even without considering Defendant's acknowledgement that the beer he drank was in the car (a fact the Barocio Declaration does not contra), these facts alone established at least a fair probability that evidence of the crime would be inside.  And once the officer began searching the car, he obtained

1    information giving him probable cause to search for evidence of marijuana possession.

2         Defendant argues that "the police report does not state that from their vantage point the

3    officers could be certain that the bottle they reportedly saw Mr. Garcia drink from was in fact a

4    beer bottle or that it contained an alcoholic beverage."  Reply, at 5.  Probable cause does not

5    require certainty.  "Probable cause exists when, under the totality of the circumstances, 'there is a

6    fair probability that contraband or evidence of a crime will be found in a particular place.'"  Davis,

7    530 F.3d at 1084 (quoting United States v. Luong, 470 F.3d 898, 902 (9th Cir.2006)).

8         Defendant also states "it is not clear whether, on this record, possession of an open

9    container in a car is unlawful."  Reply, at 5.  Defendant cites only an unpublished case for this

10   proposition.  People v. Salazar, B148705, 2002 WL 511597 (Cal. Ct. App. Apr. 5, 2002).  Salazar

11   held only that, at least as of 2002, section 23223(a) of the State Vehicle Code did not prohibit

12   possession of an open container on the facts of that case.  It did not discuss the potential

13   applicability of other state laws or local ordinances that might make such possession of an open

14   container unlawful in a car.  And in any case, the officers had probable cause based on

15   Defendant's open consumption in the parking lot, and the smell of marijuana.

16        Even assuming the accuracy of the Barocio Declaration, the government has established

17   the applicability of the "automobile exception" to the warrant requirement.

18        **C.       Warrantless Search of Cellphone**

19        Defendant has moved to suppress "any text messages or other evidence obtained as a result

20   of the search of his cell phone."  Mot., at 2.  The Supreme Court recently unanimously held that

21   police may not, "without a warrant, search digital information on a cell phone seized from an

22   individual who has been arrested."  Riley v. California, __ U.S. __, 134 S. Ct. 2473, 2480 (2014).

23   "Our answer to the question of what police must do before searching a cell phone seized incident

24   to an arrest is . . . simple—get a warrant."  Id. at 2495.

25        There is no material dispute about the facts underlying the officers' search of Defendant's

26   phone, which was conducted without a warrant.  Nonetheless, the United States argues that

27   suppression is not appropriate for two different, albeit closely related, reasons.

28        First, the government argues that "application of the exclusionary rule in this case would

United States District Court
Northern District of California

8

United States District Court
Northern District of California

1    serve no purpose but would impose a significant cost on society." Sur-Reply, at 10.  It relies

2    primarily on the Supreme Court's statement that the exclusionary rule is "applicable only when

3    suppression would result in appreciable deterrence that outweighs the cost to the justice system."

4    Herring v. United States, 555 U.S. 135, 150 (2009).  Second, it argues that "[e]vidence obtained

5    during a search conducted in reasonable reliance on binding precedent is not subject to the

6    exclusionary rule."  Davis v. United States, __ U.S. __, 131 S. Ct. 2419, 2429 (2011).  Both of the

7    government's arguments are rooted in the same principle: that one of the main policy rationales

8    underlying the exclusionary rule is diminished when officers reasonably believe in good faith that

9    their actions comport with the Constitution.

10        The government's first argument is unpersuasive.  Herring does not apply here, since in

11   Herring (and its many of its progeny), the officers relied in good faith upon information provided

12   by other officials.  By contrast, this case involves deliberate actions taken by officers on the basis

13   of their own perceptions and judgments.

14        The government's second argument, from Davis, is more convincing.  To the extent Riley

15   changed the law regarding the constitutionality of cellphone searches, suppressing evidence

16   because of the officers' pre-Riley actions would serve little deterrent purpose.

17        As an initial matter, the Court is persuaded by Justice Sotomayor's separate opinion in

18   Davis, noting that suppression was inappropriate in Davis because "'binding appellate precedent

19   specifically *authorize[d]* a particular police practice,' . . . in accord with the holdings of nearly

20   every other court in the country." 131 S. Ct. at 2435 (Sotomayor, J., concurring in judgment)

21   (emphasis in the original) (quoting id., 131 S. Ct. at 2429 (maj. op.)).  While suppression would

22   serve little deterrent purpose in that situation, that "is a different question from whether exclusion

23   would appreciably deter Fourth Amendment violations when the governing law is unsettled."  Id.

24   at 2436.[4]

25

26   _____

27   [4] Justice Sotomayor persuasively argued that there is a strong rationale for applying the
     exclusionary rule when the law is unsettled and no binding authority has specifically authorized
     the challenged search.  See Davis, 131 S. Ct. at 2435 (Sotomayor, J., concurring in judgment)

28   (quoting United States v. Johnson, 457 U.S. 537, 561 (1982) ("If, as the Government argues, all

1    For this reason, the Court does not agree with the United States that the Court should

2    refuse to suppress the cellphone search because the officers searched Defendant's cellphone in

3    reliance on the Supreme Court's 1973 holding that officers may open a cigarette package found on

4    a suspect's person incident to his arrest.  United States v. Robinson, 414 U.S. 218, 235-36 (1973).

5    The purposes of, and expectations surrounding, a cigarette pack and a cell phone are so different

6    that it cannot reasonably said that a case permitting the search of one object "specifically

7    authorized" the search of the other, particularly given that cell phones were not even a glint in the

8    eye of the courts in 1973.  See Riley, 134 S. Ct. at 2484 (noting that smart phones "are based on

9    technology nearly inconceivable just a few decades ago" when Robinson was decided).

10    The police here were acting under much stronger authority than Robinson, however.  Just

11    seven months before the search in this case, the California Supreme Court specifically held that

12    "the warrantless search of [a] defendant's cell phone was valid" as part of a search incident to

13    arrest.  People v. Diaz, 51 Cal. 4th 84, 101 (2011).  The United States argues that, under Davis,

14    Diaz provided "binding appellate precedent" that authorized the search, making suppression

15    unavailable as a remedy.

16    Defendant argues that a California Supreme Court holding cannot qualify as "binding

17    appellate precedent," since it is not binding upon this Court, in which the prosecution is taking

18    place.[5]  Defendant bases this argument on the fact that in Davis, and in United States v. Pineda-

19    Moreno, 688 F.3d 1087, 1090-91 (9th Cir. 2012), cert. denied, 133 S. Ct. 994, (U.S. 2013), the

20    precedents at issue were federal circuit court cases.  But neither of these cases suggest that Davis

21    cannot apply to the precedents of state supreme courts.

22    In considering the deterrent principles underlying the rule of Davis, and applying those

23

24    rulings resolving unsettled Fourth Amendment questions should be nonretroactive, then, in close

25    cases, law enforcement officials would have little incentive to err on the side of constitutional
      behavior.  Official awareness of the dubious constitutionality of a practice would be
      counterbalanced by official certainty that, so long as the Fourth Amendment law in the area

26    remained unsettled, evidence obtained through the questionable practice would be excluded only

27    in the one case definitively resolving the unsettled question.")  The present case does not implicate
      the concerns Justice Sotomayor expressed in Davis.

28    [5] One leading treatise does suggest that for Davis to apply, the precedent must be binding "in the
      jurisdiction of ultimate prosecution."  W. LaFave, 1 Search & Seizure § 1.3(h) (5th ed.).

United States District Court
Northern District of California

United States District Court
Northern District of California

1  principles to the facts of this case, the Court concludes that Diaz provides sufficient "binding

2  appellate precedent" that "specifically authorized" the actions the officers took in this case.  The

3  officers were investigating the violation of local and state laws, and it was likely that any

4  prosecution arising out of their investigations would take place in California state court.  The fact

5  that their investigatory efforts ended up later supporting a prosecution in federal court cannot

6  logically transform their actions from the reasonable application of binding precedent to a

7  constitutional violation deserving of suppression.  It might be a different question if Diaz were not

8  so squarely on-point, if the decision had been issued by an intermediate state court of appeal, or if

9  there were contradictory authority in the Ninth Circuit that made the question of cellphone

10  searches unsettled in California in August 2011.  But on the facts as they are, the rationale of

11  Davis applies with significant force.

12      Obviously, given how recently Riley was decided, few courts have had an opportunity to

13  continue the interplay between Riley and Davis.[6]  Both opinions this Court has located which

14  directly address the question read Davis as precluding the suppression of cellphone searches

15  conducted before Riley was decided.  See United States v. Spears, __ F. Supp. 2d __, No. 4:14-

16  CR-82-O, 2014 WL 3407930, at *4 (N.D. Tex. July 14, 2014) (suppression inappropriate since,

17  before Riley, a 2007 Fifth Circuit opinion held that an officer was permitted to search a cell phone

18  pursuant to lawful arrest); United States v. Clark, __ F. Supp. 2d __, No. 1:13-CR-84, 2014 WL

19  2895457, at *12-13 (E.D. Tenn. June 26, 2014) (suppression inappropriate under both Davis and

20  Herring).[7]

21      A third court, in this district, also considered this issue very recently.  United States v.

22  Martinez, No. 13-cr-00794-WHA, 2014 WL 3956677, at *4-5 (N.D. Cal. Aug. 12, 2014).  But the

23

24  _____

    [6] The Supreme Court's Riley opinion consolidated two appeals, one of which was from California.

25  In that case, the search took place in 2009, before Diaz was decided.  See People v. Riley,
    D059840, 2013 WL 475242, at *1-2 (Cal. Ct. App. Feb. 8, 2013), unpublished/noncitable (Feb. 8,

26  2013), review denied (May 1, 2013), rev'd, 134 S. Ct. 2473 (U.S. 2014).  So, in Riley itself,
    suppression of the evidence may hinge on the extent to which binding California appellate

27  precedent specifically authorized cellphone searches at the time of that search.
    [7] United States v. Brown, No. 14-CR-20007, 2014 WL 3924635, at *2 (C.D. Ill. Aug. 11, 2014)

28  appears to have reached the same conclusion, but it may have done so in dicta.

1   Martinez court ultimately concluded that it "need not decide whether Davis and Diaz apply in light

2   of Riley, because on this record, the search of Martinez's iPhone was not incident to his arrest."

3   2014 WL 3956677, at *4.  By this, the Court reads Martinez as concluding that the search failed to

4   qualify as a permissible search incident to arrest for some reason *other* than the reasons rejected in

5   Diaz and accepted in Riley.  Otherwise, Davis would presumably apply, since the officers were

6   entitled to rely on Diaz's then-binding holding.

7          Under Davis, since the officers acted within the scope of directly applicable appellate

8   precedent that specifically permitted the search of cellphone information incident to arrest, the

9   exclusionary rule does not bar admissibility of evidence obtained in the now-unconstitutional

10  search of the cellphone.

**IV.    CONCLUSION**

12         The motion to suppress is DENIED.

13         **IT IS SO ORDERED.**

14  Dated:  September 12, 2014

15  _____
                                  JON S. TIGAR
16                                United States District Judge