UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>HERI GARCIA,<br><br>　　　　Defendant. | Case No. 13-cr-00601-JST-1<br><br>**ORDER GRANTING MOTION TO VACATE SENTENCE**<br><br>Re: ECF No. 58 |

Before the Court is Defendant Heri Garcia's motion to vacate sentence pursuant to 28 U.S.C. § 2255. ECF No. 58. On July 13, 2016, the Court granted Defendant's motion, ECF No. 73, and scheduled a re-sentencing hearing for August 26, 2016, ECF No. 74. This order sets forth the reasoning underlying the Court's July 13, 2016 order granting Defendant's motion.

**I.　　BACKGROUND**

On September 12, 2013, Defendant was charged by indictment with one count of violation of 18 U.S.C. § 922(g)(1) (felon in possession of a firearm). ECF No. 1. On March 18, 2015, Defendant pleaded guilty to that count in the indictment. ECF No. 56. The Court sentenced Defendant to 30 months imprisonment. Id. at 2. Defendant voluntarily surrendered to begin his sentence on May 12, 2015, and his anticipated release date is June 28, 2017. ECF No. 58 at 1–2.

In determining Defendant's sentence, the Court first concluded that Defendant's base offense level was 20 under U.S.S.G. § 2K2.1(a)(4)(A) because Defendant had a prior conviction for a "crime of violence," namely involuntary manslaughter under Cal. Penal Code § 192(b). ECF No. 58 at 2; ECF No. 65 at 8. The Court then increased Defendant's offense level by two under U.S.S.G. §2K2.1(b)(4)(A) based on his possession of a firearm that was stolen, and decreased Defendant's offense level by three based on Defendant's acceptance of responsibility. Id. These

adjustments resulted in an offense level of 19, and a corresponding Guidelines sentencing range of 37 to 46 months.  Id.

On April 25, 2016, Defendant filed a motion to vacate his sentence pursuant to 28 U.S.C. § 2255.  ECF No. 58.  The Court held a hearing on Defendant's motion on June 10, 2016 and took the matter under submission.  ECF No. 67.  On July 13, 2016, the Court granted Defendant's motion, noted that a subsequent order would set forth the Court's reasoning, and scheduled a resentencing hearing.  ECF No. 73.

## II. LEGAL STANDARD

Defendant's motion to vacate his sentence arises under 28 U.S.C. § 2255, which provides:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. 2255(a).  Thus, "[u]nder 28 U.S.C. § 2255, a federal court may vacate, set aside, or correct a federal prisoner's sentence if the sentence was imposed in violation of the Constitution or laws of the United States."  United States v. Withers, 638 F.3d 1055, 1062 (9th Cir. 2011).

## III. ANALYSIS

Defendant challenges his sentence based on the fact that the Guidelines calculation underlying his sentence incorporated the same definition of a "crime of violence" that the Supreme Court recently determined was unconstitutionally vague in the context of the Armed Career Criminal Act ("ACCA") in Johnson v. United States, 135 S. Ct. 2551 (2015).  Absent the conclusion that Defendant had previously been convicted of a "crime of violence," Defendant argues his base offense level would have been 13, as opposed to 20, resulting in a corresponding Guidelines sentencing range of 18 to 24 months, as opposed to 37 to 46 months.[1]  ECF No. 58 at 2.

Defendant's base offense level was calculated to be 20 under U.S.S.G. § 2K2.1(a)(4)(A)

---

[1] The government does not dispute these figures.  ECF No. 65.

based on the Court's conclusion that Defendant's conviction for involuntary manslaughter under Cal. Penal Code § 192(b) constituted a "crime of violence." Section 2K2.1(a)(4)(A) incorporates the definition of "crime of violence" set forth in section 4B1.2(a), which provides:

> The term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that --
>
> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
>
> (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

The Court determined that Defendant's prior conviction for involuntary manslaughter fit within this definition of crime of violence because involuntary manslaughter "involves conduct that presents a serious potential risk of physical injury to another." U.S.S.G. § 4B1.2(a)(2). This portion of section 4B1.2(a)'s definition of "crime of violence" is generally referred to as the "residual clause."

In Johnson, the Supreme Court determined that the definition of "violent felony" in a separate statute, 18 U.S.C. § 924(e)(2)(B), was unconstitutionally vague such that "imposing an increased sentence [under that statute] violates the Constitution's guarantee of due process." 135 S. Ct. at 2563. The definition of "violent felony" at issue in Johnson is identical to the definition of "crime of violence" found in U.S.S.G. § 4B1.2(a), the statute at issue in this case. In ruling that the definition of "violent felony" in 18 U.S.C. § 924(e)(2)(B) was unconstitutionally vague, the Supreme Court focused its analysis on the residual clause, which this Court also relied upon in calculating Defendant's base offense level. Id. at 2557 ("We are convinced that the indeterminacy of the wide-ranging inquiry required by the residual clause both denies fair notice to defendants and invites arbitrary enforcement by judges. Increasing a defendant's sentence under the clause denies due process of law.").

The government concedes that the Supreme Court's holding in Johnson "applies to the residual clause of section 4B1.2 for cases on direct appeal." ECF No. 65 at 3. Thus, the government concedes that were Defendant before the Court today for sentencing in the first

3

instance, the Court would not be permitted to conclude that Defendant's prior involuntary manslaughter conviction constituted a "crime of violence," resulting in a base offense level of 20. Rather, were Defendant before the Court today for sentencing in the first instance, the Court would calculate Defendant's base offense level to be 13. Nonetheless, the government argues that Defendant is not entitled to relief pursuant to 28 U.S.C. § 2255 for two reasons. Id. First, the government argues that Defendant "procedurally defaulted his *Johnson* claim and cannot show cause and prejudice." Id. Second, the government asserts that "*Johnson* is not retroactive to challenges to the" Sentencing Guidelines. Id. at 12.

### A. Procedural Default

"The general rule in federal habeas cases is that a defendant who fails to raise a claim on direct appeal is barred from raising the claim on collateral review." Sanchez-Llamas v. Oregon, 548 U.S. 331, 350–51 (2006); United States v. Ratigan, 351 F.3d 957, 962 (9th Cir. 2003) ("A § 2255 movant procedurally defaults his claims by not raising them on direct appeal and not showing cause and prejudice or actual innocence in response to the default."). There is, however, "an exception if a defendant can demonstrate both 'cause' for not raising the claim at trial, and 'prejudice' from not having done so." Sanchez-Llamas, 548 U.S. at 351.

Here, the government argues that Defendant procedurally defaulted his claim based on the vagueness of the residual clause by failing to raise that claim on direct appeal. Defendant acknowledges that he failed to raise this claim on direct appeal. ECF No. 66 at 2. Nonetheless, Defendant argues that his procedural default should be excused because he has demonstrated both cause and prejudice. Id.

#### 1. Cause

"In procedural default cases, the cause standard requires the petitioner to show that some objective factor external to the defense impeded counsel's efforts to raise the claim [on direct appeal]." McCleskey v. Zant, 499 U.S. 467, 493 (1991) (internal quotation marks omitted). "Objective factors that constitute cause include . . . a showing that the factual or legal basis for a claim was not reasonably available to counsel." Id.; Reed v. Ross, 468 U.S. 1, 16 (1984) (holding that "where a constitutional claim is so novel that its legal basis is not reasonably available to

4

counsel, a defendant has cause for his failure to raise the claim . . . .").

The government argues that Defendant cannot show cause because "the vagueness claim he now asserts was reasonably available to him when he pleaded guilty." ECF No. 65 at 11. Defendant responds that cause is shown under Reed because Johnson explicitly overruled the holdings in James v. United States, 550 U.S. 192 (2007) and Sykes v. United States, 131 S. Ct. 2267 (2011). See Johnson, 135 S. Ct. at 2563 ("We hold that imposing an increased sentence under the residual clause of the Armed Career Criminal Act violates the Constitution's guarantee of due process. Our contrary holdings in *James* and *Sykes* are overruled."). In this way, Defendant contends that challenging the residual clause as unconstitutionally vague was not "reasonably available" to his him at the time of his sentencing in March 2015 because two Supreme Court opinions rejected such a theory. According to Defendant, this theory only became available to him in June 2015 when Johnson overruled James and Sykes.

The Court agrees with Defendant. In James, the majority rejected Justice Scalia's argument in dissent that the residual clause of the ACCA was unconstitutionally vague, stating: "[t]he statutory requirement that an unenumerated crime 'otherwise involv[e] conduct that presents a serious potential risk of physical injury to another' is not so indefinite as to prevent an ordinary person from understanding what conduct it prohibits." 550 U.S. at 210 n.6. Similarly, in Sykes, the majority declined Justice Scalia's suggestion in dissent that the Court "admit that ACCA's residual provision is a drafting failure and declare it void for vagueness." 564 U.S. at 28 (Scalia, J., dissenting). Moreover, the Ninth Circuit recognized that both "Supreme Court and Ninth Circuit precedent foreclose" arguments "that the ACCA's residual clause is unconstitutionally vague." United States v. Martinez,[2] 771 F.3d 672, 678 (9th Cir. 2014). At the time the Johnson decision issued on June 26, 2015, "[n]othing ha[d] changed since [the Supreme Court's] decisions in *James* and *Sykes*" in 2007 and 2011, respectively. Johnson, 135 S.Ct. at

---

[2] The Supreme Court subsequently granted certiorari in Martinez, vacated the judgment, and remanded the case to the Ninth Circuit in light of Johnson. Martinez v. United States, 135 S. Ct. 2939 (2015).

5

2575 (Alito, J., dissenting). As a result, at the time Defendant was sentenced by this Court in March 2015, the newly available theory put forward by <u>Johnson</u> was not "reasonably available" to Defendant. <u>Reed</u>, 468 U.S. at 16. <u>See</u> also <u>Johnson</u>, 135 S. Ct. at 2573 (Alito, J., dissenting) ("[B]rushing aside *stare decisis*, the Court holds that the residual clause is unconstitutionally vague even though we have twice rejected that very argument within the last eight years."). Accordingly, the Court concludes that Defendant has shown cause to excuse his procedural default. <u>See</u> <u>United States v. Stamps</u>, No. 13-cr-238-CW, 2016 WL 3747286, at *3 (N.D. Cal. June 29, 2016) (concluding that defendant had established cause for his failure to raise his claim based on <u>Johnson</u> on direct review and noting that "it is indisputable that, at the time Movant could have filed a direct appeal, a claim that the residual clause in the Career Offender Guideline was void for vagueness would not have succeeded"); <u>United States v. Dean</u>, -- F. Supp. 3d --, No. 13-cr-00137, 2016 WL 1060229, at *6 (D. Or. Mar. 15, 2016) (concluding that defendant had established cause for his failure to raise his claim based on <u>Johnson</u> on direct review because the legal basis for that claim "was not reasonably available to him before" <u>Johnson</u>).

### 2. Prejudice

"If a petitioner succeeds in showing cause, the prejudice prong of the test requires demonstrating 'not merely that the errors at . . . trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" <u>United States v. Braswell</u>, 501 F.3d 1147, 1150 (9th Cir. 2007) (emphasis in original) (quoting <u>United States v. Frady</u>, 456 U.S. 152, 170 (1982)). This standard "is significantly greater than that necessary under" the plain error standard. <u>Murray v. Carrier</u>, 477 U.S. 478, 494 (1986).

Defendant argues that he has shown prejudice because "[h]is adjusted offense level and corresponding guideline range was significantly increased because of the conclusion—now determined to be unconstitutional—that he had a prior conviction for a crime of violence." ECF No. 66 at 4. The government responds that Defendant has not shown prejudice because Defendant "was sentence after the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), and this Court therefore had nearly unfettered discretion to impose any sentence that Congress

made applicable to [the underlying] offense." ECF No. 65 at 11.

The Court notes that at least one other court in this Circuit has been presented with this precise question and has ruled that "because [the defendant's] advisory sentencing range was calculated using what the Government stipulates was an unconstitutionally vague provision," the defendant has shown prejudice under Braswell and Frady. Dean, 2016 WL 1060229, at *12. Dean noted that although Booker "established that the Guidelines are advisory, after *Booker* the Supreme Court has repeatedly stated that 'district courts *must* begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process.'" 2016 WL 1060229, at *12 (quoting Peugh v. United States, 133 S. Ct. 2072, 2083(2013)). Indeed, the Supreme Court has stated that "[e]ven if the sentencing judge sees a reason to vary from the Guidelines, 'if the judge uses the sentencing range as the beginning point to explain the decision to deviate from it, *then the Guidelines are in a real sense the basis for the sentence*.'" Peugh, 133 S. Ct. at 2083 (emphasis in original) (quoting Freeman v. United States, 131 S. Ct. 2685, 2692 (2011) (plurality opinion)); id. at 2084 ("[T]he Sentencing Commission's data indicate that when a Guidelines range moves up or down, offenders' sentences move with it."); id. ("The federal system adopts procedural measures intended to make the Guidelines the lodestone of sentencing."). Similarly, the Ninth Circuit has stated that a district court's "failure accurately to state the [correct] Guidelines range . . . derail[s] the sentencing proceeding before it even beg[ins]." United States v. Vargem, 747 F.3d 724, 728 (9th Cir. 2014) (internal quotation marks omitted). Based on this authority, the Dean court concluded that the defendant had "made the requisite showing of actual prejudice sufficient to overcome procedural default." 2016 WL 1060229, at *12. The Court agrees with the Dean court's well-reasoned analysis and therefore concludes that Defendant has sufficiently shown prejudice. See also Stamps, 2016 WL 3747286, at *4 ("[T]he constitutional error in calculating Movant's Guidelines range 'worked to his actual and substantial disadvantage.'") (quoting Frady, 456 U.S. at 171) (emphasis in original); Cummings v. United States, No. 15-cv-1219, 2016 WL 799267, at *7 (E.D. Wis. Feb. 29, 2016) ("[I]f the Court had applied the correct guideline range (without the career offender enhancement),

then it would have sentenced Mr. Cummings to a lower sentence, establishing prejudice.").[3]

Accordingly, the Court holds that Defendant has shown both cause and prejudice to excuse his procedural default.

### B. Retroactivity of Johnson

Under Teague v. Lane, as a general matter, "new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced." Teague v. Lane, 489 U.S. 288, 310 (1989). Teague and its progeny, however, "recognize two categories of decisions that fall outside this general bar on retroactivity for procedural rules." Welch v. United States, 136 S. Ct. 1257, 1264 (2016). First, "new *substantive* rules generally apply retroactively." Id. (emphasis in original) (internal quotation marks omitted). Second, "new watershed rules of criminal procedure, which are procedural rules implicating the fundamental fairness and accuracy of the criminal proceeding, will also have retroactive effect." Id. (internal quotation marks omitted).

"'A rule is substantive rather than procedural if it alters the range of conduct or the class of persons that the law punishes.'" Id. at 1264–65 (quoting Schriro v. Summerlin, 542 U.S. 348, 353 (2004)). "'This includes decisions that narrow the scope of a criminal statute by interpreting its

---

[3] The Court finds unpersuasive the government's argument based on Molina-Martinez v. United States, 136 S. Ct. 1338 (2016). ECF No. 65 at 11–12. In Molina-Martinez, the Supreme Court concluded that under the plain error standard applied pursuant to Fed. R. Crim. P. 52(b), a showing of an incorrectly calculated Guidelines range "will suffice for relief if the other requirements of Rule 52(b) are met." Id. The government argues that because the standard for showing prejudice to excuse a procedural default "is significantly greater than that necessary under" the plain error standard, Murray, 477 U.S. at 494, "[t]o show prejudice for the purposes of the cause-and-prejudice standard, therefore, a defendant should have to shoulder an additional burden and show more than an error in the calculation of the Guidelines." ECF No. 65 at 12. However, simply because Molina-Martinez held that an incorrectly calculated Guidelines range shows prejudice under the lower plain error standard, does not mean that an incorrectly calculated Guidelines range cannot show prejudice under the higher procedural default standard. Moreover, far from suggesting that defendant has not shown prejudice here, Molina-Martinez adds additional support to the cases cited by the Dean court emphasizing the significant effect that the Guidelines have on sentencing even after Booker. See Molina-Martinez, 136 S. Ct. at 1346 ("These sources confirm that the Guidelines are not only the starting point for most federal sentencing proceedings but also the lodestar.")

terms, as well as constitutional determinations that place particular conduct or persons covered by the statute beyond the State's power to punish.'" Id. (quoting Schriro, 542 U.S. at 351–52). "Procedural rules, by contrast, 'regulate only the *manner of determining* the defendant's culpability.'" Id. (quoting Schriro, 542 U.S. at 353) (emphasis in original). "Such rules alter 'the range of permissible methods for determining whether a defendant's conduct is punishable.'" Id. "'They do not produce a class of persons convicted of conduct the law does not make criminal, but merely raise the possibility that someone convicted with use of the invalidated procedure might have been acquitted otherwise.'" Id.

Under this framework, the Supreme Court in Welch held that "the rule announced in *Johnson* is substantive . . . because *Johnson* changed the substantive reach of the [ACCA], altering the range of conduct or the class of persons that the Act punishes." Id. The Welch court reasoned:

> Before *Johnson,* the Act applied to any person who possessed a firearm after three violent felony convictions, even if one or more of those convictions fell under only the residual clause. An offender in that situation faced 15 years to life in prison. After *Johnson,* the same person engaging in the same conduct is no longer subject to the Act and faces at most 10 years in prison.

Id. at 1265. As a result, the Supreme Court concluded that the rule announce in Johnson "has retroactive effect under *Teague* in cases on collateral review." Id.

Nonetheless, the government argues that "[t]he rule announced in *Johnson* is not retroactive on collateral review to career offender designations [under U.S.S.G. § 2K2.1(a)(4)(A), as opposed to under the ACCA,] because a career offender designation results from a procedural application of Sentencing Guidelines, not a substantive interpretation of a statute." ECF No. 65 at 12–13.[4] The government seeks to distinguish Welch because a "[m]isapplication[] of the

---

[4] The Court notes that the Supreme Court has recently granted certiorari in Beckles v. United States, No. 15-8544, 2016 WL 1029080, at *1 (June 27, 2016). Among the questions presented in the Beckles petition for writ of certiorari was: "Whether *Johnson* applies retroactively to collateral cases challenging federal sentences enhanced under the residual clause in U.S.S.G. § 4B1.2(a)(2)?" Accordingly, it appears that the Supreme Court will likely resolve this issue within the next year. The Court denied the government's motion to stay this case in light of Beckles, noting: "Were the Court to wait until the Supreme Court issues its ruling in Beckles before ruling on Defendant's motion, such a delay might moot any relief that might be due to Defendant, especially given that Defendant's anticipated release date is June 28, 2017." ECF No. 72.

9

1  Sentencing Guidelines," which is at issue here, does "not have the same consequences that the
2  Court identified in Welch." Id. at 14.  According to the government, "[a]n error in calculating the
3  guidelines range, . . . does not alter the statutory sentencing range or prevent reimposition of the
4  same sentence without the career offender enhancement, as would be true with prejudicial *Johnson*
5  error in the ACCA setting" because "'the Guidelines merely guide the execution of a court's
6  discretion in selecting the appropriate sentence.'" Id. at 15 (quoting Frazier v. United States, 2016
7  WL 885082, at *5 (E.D. Tenn. Mar. 8, 2016).

8  Defendant responds that "[r]etroactivity is a categorical analysis: if a new rule is
9  substantive, as [Welch told us] *Johnson* is, it must be applied retroactively to *all* cases on
10 collateral review." ECF No. 66 at 5 (emphasis in original).  To support this assertion, Defendant
11 cites Reina-Rodriguez v. United States, 655 F.3d 1182, 1189 (9th Cir. 2011).

12 In Reina-Rodriguez, the Ninth Circuit considered whether its prior decision in United
13 States v. Grisel, 488 F.3d 844 (9th Cir. 2007) should be applied retroactively under Teague.  As in
14 Johnson, Grisel involved a conviction for felon in possession of a firearm in violation of 18 U.S.C.
15 § 922(g).  Also like Johnson, Grisel involved the district court's application of a mandatory
16 sentence enhancement under the ACCA based on the defendant's prior conviction for certain
17 "violent felonies."  While Johnson concerned whether certain prior convictions satisfied the
18 residual clause of 18 U.S.C. § 924(e)(2)(B)(ii), Grisel concerned whether defendant's prior
19 convictions for burglary under Oregon law constituted a burglary within the meaning of that same
20 provision.  The Grisel court concluded that "second-degree burglary under Oregon law is not a
21 categorical burglary for purposes of the ACCA" and therefore vacated the district court's sentence,
22 which had been enhanced under the ACCA based on defendant's prior conviction for second-
23 degree burglaries under Oregon law.  488 F.3d at 851.

24 In Reina-Rodriguez, the Ninth Circuit was confronted with the question of whether the rule
25 laid out in Grisel should be applied retroactively not to a mandatory sentencing enhancement, as
26 was the case in Grisel, but to the district court's Sentencing Guidelines calculation.  655 F.3d at
27 1185–86.  "The district court applied a 16-level enhancement because Reina-Rodriguez had
28 previously been convicted of second-degree felony burglary in Utah . . . which the court concluded

1   was a felony 'crime of violence' under the Guidelines." Id. The Ninth Circuit found that Grisel
2   should be applied retroactively, noting that Grisel concluded that "second-degree burglary under
3   Oregon law is not a categorical burglary for purposes of the [ACCA]." 488 F.3d at 845.
4   According to the Reina-Rodriguez court, "[o]ne could hardly have a clearer example of a
5   'decision[] that narrow[s] the scope of a criminal statute by interpreting its terms,'" thus rendering
6   Teague's anti-retroactivity principle inapplicable. 655 F.3d at 1189.

7   In so holding, the Reina-Rodriguez court did not "distinguish between *Grisel* in the ACCA
8   context and *Grisel* in the Guidelines context." Dean, 2016 WL 1060229, at *16. Rather, the
9   Ninth Circuit found that "a rule that is substantive in the first context is substantive in the second
10  context." Id. Here, the Supreme Court has ruled that Johnson is a substantive rule in the ACCA
11  context. Welch, 136 S. Ct. at 1265 ("By striking down the residual clause as void for vagueness,
12  *Johnson* changed the substantive reach of the Armed Career Criminal Act."). Therefore, under
13  Reina-Rodriguez,[5] Johnson is also a substantive rule in the Guidelines context. Accordingly, the
14  Court concludes that Defendant's Johnson claim is not barred by Teague's anti-retroactivity
15  principle because Johnson set forth a substantive rule, which is retroactive even in the context of
16  Sentencing Guidelines determinations. Dean, 2016 WL 1060229, at *16 ("The Court declines to
17  depart from the Ninth Circuit's reasoning in Reina-Rodriguez and hold that the retroactive nature
18  of Johnson's new rule changes when it is applied to the Guidelines."); Stamps, 2016 WL 3747286,
19  at *6 (holding that Johnson applies retroactively to Sentencing Guidelines determinations and
20  noting that "[a]pplying Johnson to the Guidelines likewise affects the reach of those Guidelines
21  that rely on the definition of crime of violence in the Career Offender Guideline but 'has nothing
22  to do with the range of permissible methods a court might use to determine' whether those
23  Guidelines apply.") (quoting Welch, 136 S. Ct. at 1265).[6]

---

[5] The Court notes that the government did not address Reina-Rodriguez in its Opposition brief, let alone make any argument why the reasoning set forth in Reina-Rodriguez does not apply here.

[6] The Court recognizes that other courts in other circuits have reached contrary conclusions. See, e.g., Frazier v. United States, No. 09-cr-188, 2016 WL 885082, at *5 (E.D. Tenn. Mar. 8, 2016) ("Unlike the ACCA—a statute that shifts the defendant's penalty range and minimum and maximum terms of imprisonment—the Guidelines merely guide the execution of a court's discretion in selecting the appropriate sentence from within an otherwise stagnate range of lawful

United States District Court
Northern District of California

**CONCLUSION**

The Court grants Defendant's motion to vacate his sentence under 28 U.S.C. § 2255. ECF No. 58. The Court will therefore vacate and set aside the Judgment. ECF No. 56. The Court will resentence Defendant on August 26, 2016. ECF No. 74.

IT IS SO ORDERED.

Dated: August 16, 2016

_____
JON S. TIGAR
United States District Judge

---

penalties. . . . Any change in a defendant's Guideline range based on *Johnson* would thus work a change in the procedure by which his or her sentence is selected, but it would not change the permissible range of punishments. As such, the proposed rule cannot be said to narrow the scope of a penal statute or place particular conduct or persons beyond the state's power to punish."); Hallman v. United States, No. 15-cr-00468, 2016 WL 593817, at *5 (W.D.N.C. Feb. 12, 2016) ("It appears to the court that the decision announced in *Johnson*, when applied to the advisory sentencing guidelines as petitioner suggests here, is a procedural rather than a substantive rule."); United States v. Willoughby, 144 F. Supp. 3d 935, 944 (N.D. Ohio 2015) (holding that while "*Johnson* creates a substantive rule as to the ACCA because designation as an armed career criminal necessarily alters the statutory range of available sentences," it "does not establish a substantive rule as to the Sentencing Guidelines."). However, these courts were not bound by the Ninth Circuit's ruling in Reina-Rodriguez. Accordingly, the Court agrees with Dean and Stamps that the Ninth Circuit's analysis in Reina-Rodriguez, combined with the Supreme Court's holding in Welch, requires the Court to conclude that Johnson applies retroactively even in the Sentencing Guidelines context.